UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
LOUIS P. CANNON, *et al.*,                  )
                                            )
               **Plaintiffs**,                        )
                                            )
               v.                                     )    Civil Action No. 12-0133 (ESH)
                                            )
DISTRICT OF COLUMBIA,                       )
                                            )
               **Defendant.**                         )
_____)

## MEMORANDUM OPINION

Plaintiffs represent a class of retired District of Columbia police officers subsequently rehired by the District for different jobs. Following their retirements, plaintiffs received pension benefits from the District of Columbia Police Officers and Firefighters' Retirement Plan ("PFRP"). After being rehired, they continued to receive these benefits in addition to their new salaries (a practice commonly referred to as "double dipping"). In early 2012, pursuant to D.C. Code§ 5-723(e), the District began reducing plaintiffs' salaries by the amounts they received from their PFRP pensions. Plaintiffs sued for injunctive relief and damages. This Court denied plaintiffs' motions for injunctive relief and dismissed all of plaintiffs' constitutional and federal claims. The Court remanded plaintiffs' remaining D.C. law claims to Superior Court. *See Cannon v. District of Columbia*, 873 F. Supp. 2d. 272, 287-88 (D.D.C. 2012). On appeal, the Circuit affirmed the dismissal of all of plaintiffs' federal claims except the Fair Labor Standards Act ("FLSA") claim brought by three particular class plaintiffs. On this claim, the Court of Appeals directed that summary judgment be entered for plaintiffs and remanded to this Court for the determination of damages. Because a federal claim remained, the Court of Appeals also

vacated the decision not to exercise supplemental jurisdiction over the D.C. law claims. *See Cannon v. District of Columbia*, 717 F.3d 200, 206-09 (D.C. Cir. 2013).

Upon remand, plaintiffs filed a Second Amended Complaint adding an additional claim for relief under the Public Tax Act, 4 U.S.C. § 111(a). Soon thereafter, defendants filed a motion to dismiss all claims except the FLSA claim, as well as a notice of calculation of FLSA damages. For the reasons set forth below, the Court will grant defendant's motion to dismiss plaintiffs' constitutional claims (Counts I, III, and X-XI) and Public Tax Act claim (Count V) and will remand plaintiffs' D.C law claims (Counts IV, VI-IX, and XII-XV) to Superior Court. The Court will also enter summary judgment for plaintiffs Ford-Hayes, Neill, and Weeks on liability for their FLSA claim (Count II) and set a briefing schedule for the determination of back pay and damages.

## FACTUAL BACKGROUND

The material facts relevant to this case were described in detail in the Court's prior opinion and the opinion of the Court of Appeals. Therefore, an abbreviated version will suffice. Plaintiffs were police officers hired by the D.C. Metropolitan Police Department ("MPD") prior to September 30, 1987 that participated in the District of Columbia Police Officers' and Firefighters' Retirement Plan. *Cannon*, 873 F. Supp. 2d. at 275. Under federal law, the PFRP is jointly administered by the United States and the District of Columbia. *See* District of Columbia Retirement Board, District of Columbia Police Officers and Firefighters' Retirement Plan, Summary Plan Description, *available at* http://dcrb.dc.gov/sites/default /files/dc/sites/dcrb/ publication/attachments/SPD_PoliceFirePlan2012Final.pdf, at 1-2, 73 (last visited January 6,

2014) ("Summary Plan"). [1] The United States Treasury Department is responsible for all benefits attributable to services performed by plaintiffs prior to July 1, 1997. The D.C. Retirement Board ("DCRB") is responsible for benefits attributable to services performed after that date. *Id.* Upon retirement, plaintiffs began receiving benefits from their PFRP pensions.

Beginning in 2004, plaintiffs were rehired by the District of Columbia Department of General Services ("DGS"). *Cannon*, 873 F. Supp. 2d. at 275. Upon returning to work for the District, plaintiffs received both their pension benefits and their full salaries simultaneously. *Id.* In the fall of 2011, however, the District informed plaintiffs that it had mistakenly failed to enforce D.C. Code § 5-723(e), a provision which expressly forbids this sort of double-dipping, and it would soon begin reducing their DGS salaries accordingly. [2] *Id.* at 276.

On January 25, 2012, the District began reducing plaintiffs' paychecks by the amount they received from their PFRP pensions. In response, plaintiffs immediately filed for a temporary restraining order and preliminary injunction to enjoin the offset. Plaintiffs also sued for damages under the United States Constitution, federal law, and D.C. law. At a hearing on January 31, 2012, plaintiffs' motion for injunctive relief was denied. *Id.* On July 6, 2012, this Court issued a Memorandum Opinion and Order granting defendant's motion to dismiss all of plaintiffs' federal and constitutional claims. *See id.* at 287. With the absence of federal claims in

---

[1] Like the Court of Appeals, this Court takes judicial notice of the contents of this summary. *See Cannon* 717 F.3d at 205, n.2. The summary explains the federal-district relationship in the following way,

> Under Title XI of the Balanced Budget Act (Act) of 1997, Public Law 105-33, as amended, the Federal Government and the D.C. Government share responsibility for the Plan. The Treasury Department is responsible for paying benefits attributable to police officer or firefighter service performed on or before June 30, 1997. DCRB is responsible for paying benefits attributable to police officer or firefighter service performed after June 30, 1997 and for lateral transfer service.

[2] The District did not seek to recover the amounts already paid, but rather sought to fix the problem going forward only. *See Cannon,* 873 F. Supp. 2d at 276.

the case, the Court declined to exercise supplemental jurisdiction over plaintiffs' D.C. law claims and remanded them to Superior Court. *Id.* (citing 28 U.S.C. § 1367(c)(3)). The Court reasoned that "[r]emand to Superior Court [wa]s particularly appropriate . . . because plaintiffs' remaining claims raise novel and complex issue[s] of [District] law." *Id.* at 288 (citing 28 U.S.C. § 1367(c)(1)).

On appeal, the D.C. Circuit affirmed this Court's dismissal of all of plaintiffs' constitutional claims. *Cannon*, 717 F.3d at 206 ("The district court found the plaintiffs' constitutional claims meritless, and we agree."); *see also id.* at 208 ("We affirm the district court's judgment on the constitutional claims . . . ."). However, the Court of Appeals reversed this Court's dismissal of the FLSA claim brought by three plaintiffs—Sheila Ford-Haynes, Gerald Neill, and Harry Weeks. While this Court had held that these plaintiffs' pension benefits constituted "compensation" for purposes of the minimum wage to which they were entitled under the FLSA, *see Cannon*, 873 F. Supp. 2d at 279, the Court of Appeals held that this was "not a reasonable reading of the D.C. Code Section 5–723(e) [which] provides no authority for the District to claim that pension payments may be 'included as salary' . . ." *Cannon*, 717 F.3d at 205. The Court of Appeals "direct[ed] that summary judgment be entered for th[ese] three plaintiffs on that claim" and remanded as to "the extent of the District's FLSA liability" because "the parties ha[d] not briefed the issues of back pay and liquidated damages" under 29 U.S.C. § 216. *Id.* at 206. "Because the district court's decision not to exercise supplemental jurisdiction over the plaintiffs' D.C. law claims was premised on the dismissal of all federal claims from this case," the Court of Appeals also vacated "that part of the district court's order dismissing the D.C. law claims and remand[ed] for further proceedings." *Id.* at 208-09.

4

On remand, plaintiffs filed a Second Amended Complaint alleging fifteen counts (including six federal law counts and nine D.C. law counts). (Second Amend. Compl., Sept. 24, 2013 [ECF No. 50].) Though most of plaintiffs' claims were previously pled, this Complaint introduced one additional federal claim under the Public Tax Act (Count V). On October 18, defendant filed a motion to dismiss (Def. the District of Columbia's Mot. to Dismiss [ECF No. 51] ("Mot.")) and a notice of calculation of back pay (Notice of Def.'s Calculation of FLSA Back Pay [ECF No. 52] ("Notice")). Plaintiffs filed an opposition (Opp. to Def.'s Mot. to Dismiss, Nov. 8, 2013 [ECF No. 53]) in which they did not respond to defendant's calculation of back pay. Defendant then filed a reply (District of Columbia's Reply, Nov. 22, 2013 [ECF No. 54] ("Reply")) in which it argued that its FLSA back pay calculations were conceded. This Court instead issued an Order to Show Cause to plaintiffs to explain why it "should not enter a judgment in the amount calculated by defendants in their notice." (Order to Show Cause, Dec. 11, 2013 [ECF No. 55], at 1) In response, plaintiffs did not respond directly to defendant's damage calculations, but instead, they challenged the propriety of calculating the FLSA damages at this stage in the litigation. (Response to the Court's Order of Dec. 11, 2013, Dec. 19, 2013 [ECF No. 56] ("Response").)

## ANALYSIS

### I. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts must first assume the veracity of all "well-pleaded factual allegations" contained in the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *see also Atherton v. D.C. Office of Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009). Next, courts must determine whether the allegations "plausibly give rise to an entitlement to relief." (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570). "A claim has

5

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 663. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 663 (internal quotation marks omitted)). Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## II. FEDERAL CLAIMS

Of the fifteen counts in plaintiffs' second amended complaint, the six that arise under the United States Constitution or federal law include: Count I (Deprivation of Property); Count II (FLSA); Count III (Equal Protection Clause); Count V (Public Tax Act); and Counts X-XI (First Amendment). For the reasons discussed below, the Court will dismiss Counts I, III, V, and X-XI. On Count II, the Court will enter summary judgment for plaintiffs as to liability and issue an order setting a briefing schedule on the issue of damages.

### A. Constitutional Claims Previously Dismissed

In its prior opinion, this Court dismissed all of plaintiffs' constitutional claims (Counts I, III, and X-XI). *See Cannon*, 873 F. Supp. 2d at 280-87. The Court of Appeals affirmed. *Cannon*, 717 F.3d at 206 ("The district court found the plaintiffs' constitutional claims meritless and we agree."); *id.* at 208 ("We affirm the district court's judgment on the constitutional claims . . . .").

Plaintiffs seem to think that despite this affirmance, the Court is free to reconsider these constitutional claims anew because "the D.C. Circuit made a summary conclusion that D.C. Code § 5-723(e) is in some way applicable to the Plaintiffs in the present day . . .[which] ignored the entire tortured legislative history of public safety pension funding in the District of Columbia . . . [and] [i]n remanding the case to this Court for further consideration . . . the D.C. Circuit left the majority of their theories of relief unaddressed." (Opp. at 31-32.) In plaintiffs' view, the Court of Appeals' discussion of their constitution claims was nothing but "dicta." (*Id.* at 31.)

In so arguing, plaintiffs misconstrue both the Court of Appeals opinion and the relevant standard for the reconsideration of issues previously decided by a district court and affirmed on appeal. Under the doctrine known as the law of the case, "a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). Where the appeals court has "affirmatively decided the issue," the trial court is generally precluded from reconsidering that issue. *See id.* (citing *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 & n.14 (D.C. Cir. 1990)).[3] In its prior opinion, this Court directly considered plaintiffs' constitutional claims and determined that dismissal was justified. *See Cannon*, 873 F. Supp. 2d at 280-87. On appeal, the Circuit considered and affirmed the dismissal of each of these constitutional claims. *See Cannon*, 717 F.3d at 206-08. Accordingly, this Court rejects plaintiffs' unjustified attempt to

---

[3] Plaintiffs argue incorrectly that the "law of the case doctrine only applies to the prior rulings of a different judge in the same case." (Opp. at 30.) *See In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 749 (D.C. Cir. 2006) ("Law of the case doctrine applies within the same case, proceeding, or action.") The D.C. Court of Appeals opinion cited by plaintiffs, *Nunnally v. Graham*, 56 A.3d 130, 142 (D.C. 2012), is not binding on this Court and also does not stand for the proposition that plaintiffs say it does. It does not hold that the law of the case doctrine *only* applies to the prior rulings of a different judge in the same case, rather it simply holds that when a new judge enters a case, the law of the case doctrine still applies.

reopen these claims on remand and will once again dismiss with prejudice Counts I, III, and X-XI.

### B. Federal Public Tax Claim Act Claim

Plaintiffs' second amended complaint introduces a new federal claim alleging that by reducing their salaries by the amounts they received from their PFRP pensions, the District violated the Public Tax Act, 4 U.S.C. § 111(a). (*See* Second Amend. Compl., Count V, at ¶¶ 98-106.) In relevant part, the Public Tax Act provides,

> [t]he United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States, a territory or possession or political subdivision thereof, the government of the District of Columbia, or an agency or instrumentality of one or more of the foregoing, by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

Passed in 1939, prior to the establishment of District Home Rule, the Act serves as "a partial congressional consent to nondiscriminatory state taxation of federal [and D.C.] employees." *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 813 (1989). It also prohibits taxation that discriminates "based on the source of the pay or compensation being taxed." *See id*.

In Count V, plaintiffs argue that the District violated the anti-discrimination clause of the Act by taxing plaintiffs' PFRP pensions by an amount equal to one-hundred percent of their benefits. (*See* Second Amend. Compl. at ¶¶ 98-106; Opp. at 10.) They allege that this is "source discrimination" because the District of Columbia Civil Service Retirement System, which is funded by the District, is statutorily exempt from the offset provision, whereas PFRP, which is funded in part by the United States Treasury, is not. (*See* Opp. at 10-11.) In response, defendant argues that the source of plaintiffs' pension is not "federal" simply because parts of the pension benefits are paid by the United States Treasury and, in addition, that the salary offset "does not

8

'tax' [plaintiffs' retirement] benefits, but merely reduces their *District* salaries." (*See* Reply at 4 (emphasis in original).)

The Court agrees that the plaintiff has failed to state a claim under the Public Tax Act, 4 U.S.C. § 111(a), for two reasons. First, the offset scheme outlined in § 5-723(e) does not constitute a tax on plaintiffs' pension benefits earned for work done during the course of their prior employment with the MPD. At most, the offset represents a tax on plaintiffs' current salaries earned for work done at DGS.[4] Plaintiffs explicitly recognize as much in their Opposition when they state that the District has no means of actually taxing plaintiffs' annuity benefits, "since such benefits are paid directly by the United States Treasury." (Opp. at 17.) This conclusion is further supported by the fact that plaintiffs are entitled to one hundred percent of their pension benefits regardless of whether they are rehired by the District.[5] To be sure, the question of whether the District is entitled to withhold parts of plaintiffs' DGS salaries is important for the adjudication of plaintiffs' other legal claims, however, because plaintiffs' pension benefits were never reduced, they cannot constitute a tax in violation of the Public Tax Act.

The Court of Appeals' prior decision on plaintiffs' FLSA claim supports, if not compels, this conclusion. In the context of their FLSA claim, plaintiffs argued that their "compensation" for work at DGS did not include the amounts they received from their PFRP pensions. *Cannon*,

---

[4] In their Opposition plaintiffs spend a great deal of time discussing whether the offset is a "tax." (*See* Opp. at 7-9.) However, this argument is misplaced. The legal issue here is not whether the offset constitutes a tax, but rather what income is being taxed (plaintiffs' PFRP benefits or their DGS salaries).

[5] This fact, that plaintiffs state wages are reduced and not their pension benefits, also distinguishes the present case from *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989). In that case, the Supreme Court did not hold, as plaintiffs argue that "annuity payments are compensation subject to the public tax act," (Opp. at 9, n.2), but rather held that the state of Michigan could not exempt its own state retirement benefits from taxation and still tax federal benefits *directly*. *Id.* at 817.

717 F.3d at 205. The Court of Appeals agreed holding that "[t]here is no connection between their pensions and the work they currently perform for the District, and thus no sense in which their annuities constitute 'compensation' for that work." *Id.* "The District could not force the plaintiffs to suspend the receipt of the pension payments." *Id.* at 206. Now plaintiffs seek to have it both ways. For purposes of the FLSA, they argued (and the Court of Appeals agreed) that the offset applied to their new salaries such that they were not paid the minimum wage to which they were entitled. For purposes of the Public Tax Act, they now switch gears and argue that the offset constitutes an impermissible tax on their pension benefits. (*See* Opp. at 10.) As the Court of Appeals explained, "plaintiffs have no entitlement to *both* full salary *and* their annuities," *Cannon*, 717 F.3d at 207, and therefore, plaintiffs cannot now claim that the offset constitutes a tax on their pension benefits and not a reduction of their DGS salaries.

Second, even if the offsets under § 5-723(e) were to be considered "taxes" on plaintiffs' pension benefits, the District cannot have violated the Public Tax Act because the alleged taxation did not discriminate against the officer or employee "because of the source of the pay or compensation." Plaintiffs base their source discrimination argument on the fact that under the District of Columbia Retirement Protection Act of 1997, "[p]laintiffs are paid from a *Federal* system to which the United States government is directly responsible" for work done on or before June 30, 1997. (Opp. at 10.) However, as plaintiffs' own reading of the Act recognizes, the purported tax is also applied to plaintiffs' pension benefits for work done after June 30, 1997, paid for by the District. D.C. Code § 5-723 does not differentiate between pre- and post-1997 benefits. Therefore, even under plaintiffs' view, non-federal pension benefits—benefits paid for work done after 1997 by the District—are "taxed" and the alleged "discrimination" is not based

10

on the federal or non-federal source of the funds. For these reasons, Count V will be dismissed with prejudice.

### C. FLSA Claim of Plaintiffs Ford-Haynes, Neill, and Weeks

Plaintiffs Sheila Ford-Haynes, Gerald Neill, and Harry Weeks alleged in their initial complaint that by reducing their DGS salaries by the amounts received from their PFRP pensions, the District had failed to pay them the minimum salary required by the FLSA. *Cannon*, 717 F.3d at 204. Under § 13(a)(1) of the FLSA and 29 C.F.R. § 541.600(a), employees that serve in a "bona fide executive, administrative, or professional capacity" must be "compensated on a salary basis at a rate of not less than $455 per week . . . ." While the parties agreed that these particular plaintiffs work in such capacities at DGS, they disagreed on whether the pension benefits they received constituted "compensation" for FLSA purposes. *See Cannon*, 717 F.3d at 204. On appeal, the Circuit held that "the District may not count these plaintiffs' annuities as compensation for purposes of the salary basis test [because u]nder no reasonable reading of the term can the pension payments be considered 'compensation' for these plaintiffs' current work." *Id.* at 205. Therefore, the Circuit "direct[ed] that summary judgment be entered for those three plaintiffs on th[eir FLSA] claim" and remanded for a determination of back pay and liquidated damages because the parties had not yet briefed the issue "[such that] the extent of the Districts' FLSA liability remain[ed] to be determined." *Id.* at 206.

Under Fed. R. Civ. P. 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Based on the Court of Appeal's explicit instructions, this Court finds no reason to delay entering judgment as to liability on these plaintiffs' FLSA claim. Therefore,

pursuant to the Court of Appeals decision, summary judgment will be entered for plaintiffs Ford-Haynes, Neill, and Weeks on Count II.

The issue of damages, however, is not yet ripe for review. On October 28, 2013, defendant filed its "Notice of [] Calculation of FLSA Back Pay" which it referenced in its motion to dismiss filed on the same day. (*See* Mot. at 10.) Plaintiffs, however, chose not respond to the calculations contained in the Notice in their opposition. Defendant alleged in its Reply that the Court should therefore treat the calculations as conceded. (*See* Reply at 2.) The Court instead issued an Order to Show Cause as to why it "should not enter a judgment in the amount calculated by defendants in their notice." (Order to Show Cause, Dec. 11, 2013.) In response, plaintiffs once again chose not to respond to defendant's calculation and instead argued that it was premature to respond to defendants' Notice at the present stage of litigation. (*See* Response at 3.)

Under Fed. R. Civ. P. 12(d), "[i]f on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Defendant filed the Notice (which included a signed declaration and exhibits) contemporaneously with their motion to dismiss and referenced the Notice in that motion. (Mot. at 10.) Therefore, the Court will treat defendants' Notice as a motion for summary judgment on damages. The Court will give plaintiffs twenty days to respond with "all the material that is pertinent" for a determination of damages.[6] Defendant then will have fourteen days to file a reply.

---

[6] This holding should resolve the disagreement between the parties as to the appropriate time for calculating the FLSA damages to which plaintiffs Ford-Haynes, Neill, and Weeks are unquestionably

## III. D.C. LAW CLAIMS

Besides the calculation of FLSA damages, the only claims which remain in the case are the nine D.C. law counts not previously considered by this Court or the Court of Appeals. They include: Count IV (Home Rule)[7], Count VI (Breach of Contract), Count VII (Unjust Enrichment), Count VIII (Detrimental Reliance and Promissory Estoppel), Count IX (Intentional or Negligent Misrepresentation), Count XII (Defamation), Counts XIII-XIV (D.C. Whistleblower Law), and Count XV (Constructive Termination). Plaintiffs argue that this Court has exclusive jurisdiction and venue over at least one of these claims under D.C. Code § 1-815.02(a) and that they are therefore prevented from "claim splitting." (Opp. at 17-22.) Plaintiffs further argue that this Court must exercise supplemental jurisdiction over these remaining D.C. law claims under 28 U.S.C. 1367(a). (Opp. at 1-5.) However, for the reasons discussed below, the Court concludes that it does not have exclusive jurisdiction over any of plaintiffs' claims and it will decline to exercise supplemental jurisdiction over the remaining D.C. law claims. Accordingly, these claims will be remanded to D.C. Superior Court.

### A. **Exclusive Jurisdiction Under D.C. Code § 1-815.02(a)**

Plaintiffs allege, as they did in their prior pleadings, that "[i]n at least one instance, this Court has *exclusive* jurisdiction over the Plaintiffs' claims." (Opp. at 11 (citing D.C. Code § 1-815.02).) However, as this Court explained in its earlier opinion, in so arguing plaintiffs have

---

entitled. In response to this Court's Order to Show Cause, plaintiffs argued that "[w]ith regards to the Plaintiffs' FLSA claims, Defendant now specifically seeks judgment, not dismissal" and "[s]hould the Defendant seek judgment on the FLSA claims, a Rule 56 motion for summary judgment is appropriate and necessary." (Response at 3.) By treating defendant's Notice as a Rule 56 motion for summary judgment on damages, the Court prevents the needless step of requiring defendants to re-file its Notice as a separate motion for summary judgment and gives plaintiffs sufficient notice under Fed. R. Civ. P. 12(d) to respond accordingly.

[7] In plaintiffs' Opposition Brief, plaintiffs refer to their Home Rule claim as a "Commuter Tax" claim. (*See* Opp. at 15)

"misread that statute." *Cannon*, 873 F. Supp. 2d. at 288. This provision of Chapter 8 of the D.C. Code ("District of Columbia Retirement Funds") provides that the district court shall have exclusive jurisdiction over cases related to the payment of federal pensions. *See* D.C. Code § 1-815.02(a) (providing jurisdiction only for actions arising under Chapter 8). However, for the same reasons discussed above regarding plaintiffs' Public Tax Act claim, this case does not deal with the "payment of federal pensions," but rather it concerns a reduction in present salary. *See also Cannon*, 717 F.3d at 206. Plaintiffs have not articulated any reason why the Court should reconsider its prior holding and thus, for the reasons explained in its earlier opinion, the Court holds that D.C. Code § 1-815.02(a) remains inapplicable to this case.[8]

### B. Supplemental Jurisdiction Under 28 U.S.C. § 1367

Plaintiffs argue that even if this Court does not have exclusive jurisdiction, this Court must exercise supplemental jurisdiction under 28 U.S.C. § 1367(a).[9] (*See* Opp. at 1-5.) Under this statute, a district court is required to exercise supplemental jurisdiction over related state law claims, unless it finds that one (or more) of the statutory exceptions in 28 U.S.C. § 1367(c) is present,

---

[8] Without citation to binding authority, plaintiffs also argue that this Court is "completely precluded" from "claim splitting" based on § 1-815.02(a) and therefore must consider plaintiffs state law claims. (Opp. at 18-22). Though the Court believes plaintiffs' claim splitting argument is likely without merit, because the Court rejects the application of § 1-815.02 to this case, it need not consider the issue but instead will proceed to its supplemental jurisdiction analysis under 28 U.S.C. § 1367(c).

[9] Under 28 U.S.C. § 1367(a),

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(1) the claim raises a novel or complex issue of state law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Two of these exceptions represent independent bases for refusing to exercise supplemental jurisdiction over plaintiffs' pendant state law claims in this case. First, under § 1367(c)(1), the Court finds that several of the remaining claims raise novel issues of D.C. law best suited to adjudication by the D.C. Superior Court. Plaintiffs core challenge to the offset requires the interpretation of D.C. Code § 1-611.03(b), as amended by the D.C. Government Reemployed Annuitant Offset Elimination Amendment Act of 2004, Act 15-489)) and D.C. Code § 5-723(e). Questions of statutory interpretation involving local statutes are best resolved in the first instance by the local courts. *See Barnes v. Dist. of Columbia*, 611 F. Supp. 130, 136 (D.D.C. 1985) ("The plaintiffs' claims under the D.C. Code and the personnel manual involve unexplored questions of state law which are best left to the local courts. In this situation, 'a federal District Court opinion is no substitute for an authoritative decision by the courts of the District of Columbia.'") (quoting *Doe v. Bd. on Prof'l Responsibility of the D.C. Court of Appeals*, 717 F.2d 1424, 1428 (D.C. Cir. 1983)). Moreover, as other courts within this District have held, retaliation under the D.C. Whistleblower Protection Act, D.C. Code § 1-615.53(a), is an undeveloped body of law that should be interpreted by the D.C. Superior Court. *See, e.g.*, *Lowe v. Dist. of Columbia*, 669 F. Supp. 2d 18, 31-32 (D.D.C. 2009) (remand of Whistleblower Protection Act claims is especially appropriate given the undeveloped state of the law).

15

Second, under § 1367(c)(2), D.C. law claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." The only federal claim which still remains in the case is the determination of FLSA damages for plaintiffs Ford-Haynes, Neill, and Weeks. This is a narrow, largely mathematical question, which has little if anything to do with the nucleus of facts common to plaintiffs' nine D.C. law claims. It would therefore be imprudent for the Court to exercise supplemental jurisdiction over these D.C. law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) ("Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed."); *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 439 (2d Cir. 2011) ("Even if the existence of one narrow surviving federal claim means that not *all* claims over which [the district court] has original jurisdiction have been dismissed it has nonetheless become clear that the state-law claims now substantially predominate[ ] in this litigation) (internal citations and quotation marks omitted); *Dargis v. Sheahan,* 526 F.3d 981, 991 (7th Cir.2008) (not exercising supplemental jurisdiction over case with one narrow federal claim and seven state-law claims).[10] For these reasons, the Court will once again remand the remaining D.C. law claims to D.C. Superior Court.

---

[10]This is particularly appropriate in light of the goal of judicial economy. Neither this Court nor the Court of Appeals has considered previously the issues presented by plaintiffs' D.C. law claims. Nor does the determination of the FLSA damages have anything to do with defendant's liability on the remaining claims. *See Runnymede-Piper v. District of Columbia*, 2013 WL 3337797, *7 (D.D.C. July 3, 2013) ("The Court has not yet invested significant time and resources on the state law claims, and the District of Columbia Superior Court would naturally have greater familiarity and interest in the issues that remain insofar as they require interpretation of the District's own statutory and common law.").

**CONCLUSION**

Accordingly, and for the reasons stated above, the motion to dismiss will be granted as to Counts I, III, V, and X-XI. Summary judgment on liability will be entered for plaintiffs Ford-Haynes, Neill, and Weeks on their FLSA claim (Count II). They will have twenty days to file an opposition to defendant's damage calculations as presented in its Notice, which the Court is treating as a Rule 56 motion for summary judgment. Defendant then will have fourteen days thereafter to file a reply. Two separate Orders accompany this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 6, 2014